IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| JASON DEVON LENOIR, | Cause No. CV 19-191-M-KLD |
| Petitioner, | |
| vs. | ORDER |
| LYNN GUYER; ATTORNEY GENERAL OF THE STATE OF MONTANA, | |
| Respondents. | |

Petitioner Jason Devon Lenoir initially filed a petition seeking a writ of habeas corpus pursuant to 28 U.S.C. § 2254 in November of 2019. Given concerns the Court had surrounding his filing, counsel was appointed to represent Mr. Lenoir and investigate his claims. See generally, (Doc. 4.)

On March 29, 2021, Petitioner, through counsel, filed an Amended Petition. (Doc. 9.) In his petition, Mr. Lenoir raised one claim: his Sixth Amendment right to counsel was violated when the trial court did not ensure that he knowingly, voluntarily, and intelligently waived his right to counsel in violation of *Faretta v. California*, 422 U.S. 806 (1975). *Id.* at 24-29. Mr. Lenoir does not dispute that

1

this claim is procedurally defaulted but believes he can establish cause and prejudice to excuse the default. *Id*. at 19-24.

The Respondents were directed to file an Answer and timely did so. See, (Docs. 10 &14.) In their response, Respondents contend Mr. Lenoir's *Faretta* claim is unexhausted and procedurally defaulted and that he cannot demonstrate a valid basis to set aside the default. (Doc. 14 at 31-43.) Respondents assert the *Faretta* claim also fails on its merits. *Id*. at 44-58.

Generally, federal courts will not hear defaulted claims unless the petitioner can demonstrate cause for his noncompliance and actual prejudice or establish that a miscarriage of justice would result from the lack of review. See*, Schlup v. Delo*, 513 U.S. 298, 321 (1995); see also, *McKinney v. Ryan*, 730 F.3d 903, 913 (9th Cir. 2013). But this Court is empowered to bypass a procedural default issue in the interest of judicial economy when the claim clearly fails on the merits. See, *Flournoy v. Small*, 681 F. 3d 1000, 1004 n. 1 (9th Cir. 2012); see also, *Franklin v. Johnson*, 290 F. 3d 1223, 1232 (9th Cir. 2001); *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997) (noting that, in the interest of judicial economy, courts may proceed to the merits, in the face of procedural default issues).

Upon a review of the record before the Court, it appears Mr. Lenoir has failed to establish adequate cause and prejudice to excuse the default of his *Faretta* claim. But at this juncture, it is more efficient to proceed to the merits of the

claim. As explained herein, the claim lacks merit and will be denied.

Both parties have consented to proceed before the undersigned for all purposes. See, 28 U.S.C. § 636(c).[1] Further, because Mr. Lenoir's federal claim was not adjudicated on the merits in the state court, this Court reviews the claim de novo. See, *Runningeagle v. Ryan*, 825 F. 3d 970, 978 (9th Cir. 2016); see also, *Cone v. Bell*, 556 U.S. 449, 472 (2009).

## I.  Background

The procedural history of this matter has been set forth at length in a prior order of the Court. See, (Doc. 4 at 1-5.) The pertinent background is summarized below and additional factual development will be included as necessary.

On November 1, 2016, Lenoir was arraigned on counts of Sexual Intercourse without Consent, Burglary, and Violation of an Order of Protection, in Montana's Fourth Judicial District Court, Missoula County. See, (Doc. 14-2); see also, (Doc. 14-3.) A jury trial was set for Monday April 10, 2017. From the outset of the proceedings Mr. Lenoir was represented by Reed Mandelko from the Missoula Office of the State Public Defender. (Doc. 14-3.) On February 1, 2017, Mr. Lenoir filed a motion, through counsel, requesting he be able represent himself. (Doc. 14-5.) On February 21, 2017, a hearing was held on Mr. Lenoir's motion.

---

[1] See also, (Doc. 16.)

See generally, 2/21/17 Hrg. Trns. (Doc. 14-44.)  At the conclusion of the hearing, Mr. Lenoir was allowed to proceed pro se and Mr. Mandelko was appointed as stand-by counsel.

It appears that Mr. Lenoir's decision to represent himself was not a result of difficulty with Mr. Mandelko.[2]  To the contrary, Mr. Mandelko regularly communicated with Lenoir and supplied him with books and other materials prior to trial. See e.g., (Doc. 14-1 at Filing Nos. 30, 37, 40, and 53.)  Mr. Mandelko apparently advised Mr. Lenoir of his belief that it was a difficult case and Mr. Lenoir likely would not be successful at trial, based upon the facts of the matter and an incriminating interview Mr. Lenoir gave to law enforcement.  See e.g., Or. (Doc. 14-29 at 15-16)(citing 4/16/18 Hrg. Trns.).  Mr. Lenoir acknowledged he was aware of his right to counsel throughout the proceedings, but that it was his desire to represent himself.  *Id*. at 16.  The original April 2017 trial date was continued to allow Mr. Lenoir adequate time to prepare his defense.

Prior to trial, Mr. Lenoir filed various documents pro se, including a motion *in limine*, a motion challenging application of Montana's Rape Shield Law, motions to compel discovery, responses to the State's motions, jury instructions, and objections to the State's proposed instructions.  See e.g., (Doc. 14-1 at Filing

---

[2] See e.g., (Doc. 14-44 at 8:6-12)(Lenoir advised the trial court he was not seeking substitute counsel, but rather wanted to represent himself); see also, *id*. at 15:4-7; 16:2-3.

Nos. 24, 38, 50, 52, 61, 70, and 71.) Prior to trial, Mr. Lenoir also filed a writ of supervisory control with the Montana Supreme Court challenging the trial court's denial of his motion in limine and setting forth parameters surrounding the questioning of the complaining witness. The petition was ultimately denied. See, *Lenoir v. 4th Jud. Dist. Ct.*, OP 17-0375, 2017 WL 8727832, at *1 (Mont. July 11, 2017).

Mr. Lenoir's trial began on August 4, 2017. On the second day of trial, upon the arrival of the complaining witness, D.T., in the courtroom, Mr. Lenoir made an inquiry to the prosecution to see if a prior plea offer was still available. The trial proceedings were suspended while Mr. Lenoir, with assistance from Mr. Mandelko, engaged in plea discussions. Mr. Lenoir ultimately pled guilty to Sexual Intercourse without Consent; in exchange the two remaining counts were dismissed. See e.g., (Doc. 14-29 at 11-14)(summarizing prior proceedings). The district court accepted Mr. Lenoir's guilty plea and the jury was dismissed from the courtroom. A condition of the plea agreement was that the parties' recommendation was not binding upon the court. See, Plea Agreement (Doc. 14-22 at 2); see also, 8/7/17 Hrg. Trns. (Doc. 14-48 at 6-7)(court advised parties it would not accept an appropriate disposition plea agreement).

Following the change of plea hearing, Mr. Lenoir requested that Mr. Mandelko be reinstated as his attorney. See, 8/7/17 Hrg. Trns. (Doc. 14-48 at

30:11-23.) Prior to sentencing, Mr. Mandelko filed a Notice advising the court that Mr. Lenoir wished to withdraw his guilty plea. (Doc. 14-23.) The parties briefed the issue and during this period Mr. Lenoir was appointed new counsel, Leta Womack of the Missoula Conflict Office of the State Public Defender. See, (Docs. 14-26, 14-27, and 14-28.)

Mr. Lenoir generally argued that due to his autism and the stress of trial preparation, he did not recall entering his plea of guilty or the impact of that decision, thus, asserting his guilty plea was not voluntary or entered knowingly and intelligently. See e.g., (Doc. 14-26 at 3-4.)[3] Notably, Mr. Lenoir argued that it was always his intention to proceed to trial and that he "even request[ed] that his then stand-by counsel print out caselaw two days before trial commenced [and he] practic[ed] voir dire and argument with standby counsel," and that these acts demonstrated his "consistent desire and preparation" to try his case to the jury. (Doc. 14-26 at 3.)

On April 16, 2018, the Court held a hearing on Mr. Lenoir's motion to withdraw. See generally, 4/16/18 Hrg. Trns. (Doc. 14-43.) At that hearing, Clinical Psychologist Laura Kirsch testified, as did Mr. Lenoir. *Id.* Of note, Dr. Kirsch believed Mr. Lenoir did not have autism, *id*. at 13:17-18; see also, *id*. at 26-

---

[3] Mr. Lenoir also raised a speedy trial claim, that is not pertinent to the instant proceedings. See e.g., (Doc. 14-26 at 7-8.)

27, but that he may have begun developing a psychotic disorder triggered by prior drug use. *Id*. at 27-28. The trial court also discussed the sequence of events leading up to Mr. Lenoir's change of plea with Dr. Kirsch, including his self-representation and participating in the first day of trial. Dr. Kirsch opined that Mr. Lenoir is of average intelligence and that there was nothing about any of the proceedings that suggested he could not grasp or understand what was occurring. *Id*. at 30-31.

The trial court denied Mr. Lenoir's motion to withdraw and the matter proceeded to sentencing. See, (Doc. 14-29 & 14-31.) At the sentencing hearing, the Court declined to follow the parties' recommendations and committed Mr. Lenoir to the Montana State Prison for 70 years. See, Judg. (Doc. 14-32); see also, 5/7/18 Hrg. Trns. (Doc. 14-46 at 8-13.) Following review of his sentence, the Montana Sentence Review Division of the Montana Supreme Court reduced Mr. Lenoir's prison sentence from 70 to 50-years. See, SRD Ord. (Doc. 14-39.)

## II. Analysis of *Faretta* claim

The Sixth Amendment of the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right…to have the Assistance of Counsel for his defence." U.S. Const. amend. VI. The Sixth Amendment affords a criminal defendant the right to be represented by counsel at critical stages of the prosecution *and* the right to self-representation at trial See, *Faretta*, 422

U.S. at 807, 819; see also, *United States v. Farias*, 618 F. 3d 1049, 1051 (9th Cir. 2010)(observing not only the right to counsel under the Sixth Amendment, but also the converse right to proceed without counsel). Specifically, *Faretta* held, without qualification, that a defendant who makes an unequivocal and timely request to represent himself has a Sixth Amendment right to self-representation, and that a denial of self-representation, in the face of such a request, is a violation of that right. 422 U.S. at 835-36.

In order to validly waive the right to counsel, a defendant "should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that 'he knows what he is doing and his choice is made with eyes open.'" *Id*. at 806, citing *Adams v. United States ex rel. McCann*, 317 U.S. 269, 279 (1942). A defendant who elects to forgo representation must do so knowingly and intelligently. *Faretta* at 835, citing *Johnston v. Zerbst*, 304 U.S. 458, 464-65 (1938). While a defendant must be warned of the dangers and disadvantages of self-representation, the Supreme Court has not "prescribed any formula or script to be read to a defendant who states that he elects to proceed without counsel." *Iowa v. Tovar*, 541 U.S. 77, 88 (2004); see also, *McCormick v. Adams*, 621 F. 3d 970, 977 (9th Cir. 2010)(no "meticulous litany" that must be employed by a trial court in relation to a *Faretta* waiver); see also, *United States v. French*, 748 F. 3d 922, 929 (9th Cir. 2014)(noting there is no "set formula or script"). "[T]he law ordinarily

8

considers a waiver knowing, intelligent, and sufficiently aware if the defendant fully understands the nature of the right and how it would likely apply in general in the circumstances- even though the defendant may not know the *specific detailed* consequences in invoking it. *Tovar,* 541 U.S. at 92 (quoting *United States v. Ruiz*, 536 U.S. 622, 629 (2002)(emphasis in original). Finally, it is the criminal defendant's burden to prove that he "did not competently and intelligently waive" his right to the assistance of counsel. *Id.*

Mr. Lenoir argues that although the trial court did hold a hearing and engaged in a colloquy regarding his rights and the waiver of counsel, the colloquy was insufficient because the trial court did not adequately advise him of the dangers of self-representation. See, (Doc. 9 at 28-30.) Mr. Lenoir points to the suggested script the Ninth Circuit formulated and set out in *United States v. Hayes*, 231 F. 3d 1132, 1138-39 (9th Cir. 2000),[4] and asserts that the colloquy provided by

---

[4] Specifically, the Circuit has suggested that district courts provide defendants with the following instruction during a *Faretta* hearing:

> The court will now tell you about some of the dangers and disadvantages of representing yourself. You will have to abide by the same rules in court as lawyers do. Even if you make mistakes, you will be given no special privileges or benefits, and the judge will not help you. The government is represented by a trained, skilled prosecutor who is experienced in criminal law and court procedures. Unlike the prosecutor you will face in this case, you will be exposed to the dangers and disadvantages of not knowing the complexities of jury selection, what constitutes a permissible opening statement to the jury, what is admissible evidence, what is appropriate direct and cross examination of witnesses, what motions you must make and when to make them during the trial to permit you to make post-trial motions and protect your rights on appeal, and what constitutes appropriate closing argument to the jury.

the trial court did not meet these requirements. But Mr. Lenoir also acknowledges that the *Hayes* instruction is not meant to be mandatory or to be followed verbatim. (Doc. 9 at 29.) Specifically, Mr. Lenoir argues he should have been informed that he would face an experienced and skilled prosecutor and that he should have been warned about the difficulties he would encounter during jury selection and during the examination of witnesses, in addition to other complex tasks that would need to be undertaken throughout trial. See, (Doc. 17 at 7.)

In response, Respondents argue that *Faretta* and its progeny do not require any particular colloquy regarding the "dangers and disadvantages" of self-representation. (Doc. 14 at 46-47.) Particularly, Respondents point out that a specific colloquy regarding the dangers and disadvantages is not mandated by *Faretta* and such a procedural framework cannot be imposed upon the state courts because it is not compelled by the constitution. *Id*. at 47, citing, *Lopez v. Thompson*, 202 F. 3d 1110, 1117 (9th Cir. 2000)(en banc), *cert. denied,* 531 U.S. 883 (2000). Further, Respondents assert the colloquy in which the trial court engaged in satisfied *Faretta's* requirements and sufficiently demonstrated that Mr. Lenoir's waiver of counsel was unequivocal and made voluntarily and

---

*Hayes*, 231 F.3d at 1138–39

intelligently. *Id*. at 48-50. Respondents argue the trial court properly applied and incorporated the Montana Supreme Court's decisions adopting the rule of *Faretta* into the hearing on Lenoir's motion to proceed pro se. *Id*. at 50-51. Finally, Respondents claim that even though the trial court did not need to advise Mr. Lenoir of the specific and particular dangers and disadvantages of self-representation, the record establishes it did so, nonetheless. *Id*. at 52-57.

     The Court agrees with Respondents. This court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). As set forth above, *Faretta* mandated no specific litany or formula to ensure that waiver of counsel are knowing and intelligent, rather the decision provides that in order to "knowingly and intelligently" relinquish the benefit of representation by counsel, a defendant "should be made aware of the dangers of self-representation, so that the record will establish that 'he knows what he is doing and his choice is made with open eyes.'" *Lopez*, 202 F. 3d at 1117 (quoting *Faretta*, 422 U.S. at 835.) The Ninth Circuit has held, in the context of a petitioner convicted in state court seeking federal habeas relief, that: "[n]either the Constitution nor *Faretta* compels the district court to engage in a specific colloquy with the defendant. Because we cannot impose a procedural framework on state courts unless compelled by the

Constitution, we need not address whether the suggested colloquy was followed here." *Lopez*, 202 F. 3d at 1117 (citing *Smith v. Phillips*, 455 U.S. 209, 221 (1982)("Federal courts hold no supervisory authority over state judicial proceedings and may intervene only to correct wrongs of constitutional dimension.")).

*Lopez,* like the instant case, was brought under Section 2254. The Circuit found that in this particular context a federal habeas court need only consider whether the state trial court made the defendant "aware of the dangers and disadvantages of self-representation. *Lopez,* 202 F.3d at 1117 (quoting *Faretta*, 422 U.S. at 835). Or, as Mr. Lenoir concedes, there is no constitutional mandate requiring state courts to provide a more in-depth colloquy such as that suggested by *Hayes*. The Circuit additionally construed *Faretta* as a rule of general application requiring examination of the "record as a whole" in analyzing the § 2254 claim. *Id.* at 1118; *see also Edwards v. Arizona,* 451 U.S. 477, 482 (1981) (determination that a waiver was knowingly and intelligently made "depends in each case upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused"; (citations and quotations omitted); *McCormick v. Adams,* 621 F.3d 970, 979 (9th Cir.2010) ("a defective waiver colloquy will not necessitate automatic reversal when the record as a whole reveals a knowing and intelligent waiver") (citation and internal

12

quotations omitted).   When reviewing the record as a whole, it is apparent that Mr. Lenoir not only wanted to waive his right to counsel, but also understood the risks of doing so.

The trial court began its hearing on Mr. Lenoir's motion to proceed pro se by advising Mr. Lenoir that he would be asked a series of questions because "the U.S. Supreme Court and the Montana Supreme Court require that I make sure you understand the obstacles in representing yourself."  (Doc. 14-44 at 5:1-4.)  It is undisputed that the court advised Mr. Lenoir of the charges and maximum penalties; confirmed he was not under the influence of any substances or suffering from any mental or physical disabilities; and, established that he could read and write and had graduated from high school and completed some college.   See, *Id*. at 14-15, 17.  In response to the court's questioning, Mr. Lenoir advised that "of course" he knew he had the right to an attorney.  *Id*. at 15:4-7.

The Court further advised Mr. Lenoir that he would be expected to follow the rules of evidence and would be responsible for making timely objections.  *Id*. at 5:5-13.  Mr. Lenoir indicated he understood he would be required to comply.  *Id*.  Upon Mr. Lenoir's inquiry, the court agreed to provide him access to the law library at the jail.  *Id*. at 5-6.  The court informed Mr. Lenoir that he would have to follow the same rules of courtroom decorum expected of everyone else, and that if he became frustrated for not knowing a rule of law, he could request the assistance

13

of standby counsel, but that he could not be disruptive. *Id*. at 7. Mr. Lenoir was advised he would need to prepare his own jury instructions; he indicated he understood the requirement. *Id*. at 8-11. The court explained the parameters surrounding closing arguments. *Id.* at 11-12. Mr. Lenoir indicated he did not fully appreciate the nuances involved but indicated "with the help of the law library and the resources" he had, he would be ready for trial. *Id*. at 12:11-14. Mr. Lenoir stated he understood he had the right to testify in his own defense. *Id*. at 15-17. The court also informed Mr. Lenoir that it could not provide him with legal advice and would have to treat him as an attorney; Mr. Lenoir stated he understood. *Id*. at 17:3-15. Following this colloquy, Mr. Lenoir affirmatively endorsed that he was waiving his right to counsel. *Id*. at 18:19-22. Upon the court agreeing to allow Mr. Mandelko to act as standby counsel, Mr. Lenoir verified he was waiving his right to counsel voluntarily and intelligently. *Id*. at 18-19. Mr. Lenoir was also advised that he would not be able to raise a claim of ineffective assistance of counsel against Mr. Mandelko. *Id*. at 19:9-16.

    Implicit in this entire exchange between the trial court and Mr. Lenoir was the fact that Mr. Lenoir would be facing the State and its prosecutor and would be doing so pro se. And although the court did not specifically discuss voir dire or the examination of witnesses, it did inform Mr. Lenoir: he would be expected to follow the technical and substantive rules of law and evidence, he would need to prepare

jury instructions, he would have to make a decisions regarding whether or not to testify on his own behalf, he would have to decide what to include in his arguments to the court and jury, and he would be required to make timely challenges to proffered evidence. Further, Mr. Lenoir was informed he would not receive special treatment or assistance from the court and would have to follow the same rules and requirements as any attorney. Accordingly, the colloquy in question adequately ensured Mr. Lenoir made the decision to represent himself knowingly and intelligently "with awareness of the dangers and disadvantages of self-representation." See, *Faretta*, 422 U.S. at 835.

Further, at the hearing surrounding the voluntariness of Mr. Lenoir's guilty plea, there was no indication that he did not understand or appreciate the associated difficulties of self-representation, nor did he express a desire to have counsel reappointed at any time prior to the entry of his guilty plea. For example, the following exchange occurred:

Q: And so is it fair to say that you were incarcerated on September 20th, 2016, and on February 21st of 2017, you petitioned the court to represent yourself?
A: Yes, ma'am.
Q: And you decided that's what you wanted to do, correct?
A: Yes, ma'am.
Q: And at the same time, you requested a continuance of the trial date, which, at that point, was April 10th of 2017, so that you would have a chance to prepare your case for trial.
A: Yes, ma'am.

(Doc. 14-43 at 50:7-25 to 51:1-6.) Mr. Lenoir explained the steps he took to

prepare for trial which included legal research at the law library, preparing motions, petitioning the Montana Supreme Court, and consulting with Mr. Mandelko regarding trial preparation. *Id*. at 51-55, 66, 71-72, and 78. Both the trial court and the prosecution noted Mr. Lenoir filed competent and in-depth motions and briefs in support. See, *Id*. at 32:18-22; 40:5-6; 66:12; 69:15-23; 71:23-24; 72:21-23; 78:17-18; 79:6-7, and, 84:14-15 Mr. Lenoir also acknowledged he was aware of his right to counsel, but that it was his wish, throughout the pendency of the proceedings, to represent himself. *Id*. at 73: 10-21.

There is nothing in the record before this Court to suggest that at any time following his *Faretta* hearing, Mr. Lenoir expressed ambivalence or confusion regarding his waiver of counsel. The record before this Court reveals that Mr. Lenoir competently and intelligently waived his right to counsel. Accordingly, he cannot meet his burden of establishing a constitutional violation occurred. The petition will be denied.

### III. Certificate of Appealability

"The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), Rules Governing § 2254 Proceedings. A COA should issue as to those claims on which the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The standard is satisfied if "jurists of reason could disagree with the

district court's resolution of [the] constitutional claims" or "conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack*, 529 U.S. at 484).

Lenoir has not made a substantial showing that he was deprived his Sixth Amendment right to counsel. Accordingly, there are no close questions and there is no reason to encourage further proceedings in this Court. A certificate of appealability is denied.

Based on the foregoing, the Court enters the following:

## ORDER

1. The Amended Petition (Doc. 9) is denied for lack of merit.

2. The Clerk of Court is directed to enter by separate document a judgment in favor of Respondents and against Petitioner.

3. A certificate of appealability is DENIED.

DATED this 4th day of March, 2022.

*/s/ Kathleen L. DeSoto*
Kathleen L. DeSoto
United States Magistrate Judge